IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MARTIA A. WISE,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

        Defendant.

No. C12-2047

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*IV.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     *A.*   *Wise's Education and Employment Background* . . . . . . . . . . . . . . 6
     *B.*   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 7
         *1.*   *Wise's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
         *2.*   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . 9
     *C.*   *Wise's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*V.*   *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 16
     *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 18
         *1.*   *Listing 12.05C* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         *2.*   *Dr. Afridi's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . 21

---

    [1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

      *3.*    *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 26
      *4.*    *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . 29
  *C.*   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*VI.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*VII.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Martia A. Wise on July 12, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Wise asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Wise requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On October 29, 2009, Wise applied for disability insurance benefits. In her application, Wise alleged an inability to work since August 1, 1994 due to leg problems.[2]

---

[2] Prior to her eighteenth birthday, Wise received Supplemental Security Income benefits based on disability as a child. *See* Administrative Record at 14. Upon reaching the age of 18, her eligibility for disability benefits was redetermined under the rules for determining disability in adults. In a decision dated January 7, 2011, Administrative Law Judge John E. Sandbothe determined that Wise's disability ended on July 1, 2009. *See* Administrative Record at 21. Wise did not appeal this determination, and therefore, it is not an issue in this case.

On February 12, 2010, Wise's application was denied on reconsideration.[3] On February 25, 2010, Wise requested an administrative hearing before an Administrative Law Judge ("ALJ"). On May 14, 2010, Wise appeared via video conference before ALJ Marilyn P. Hamilton for an administrative hearing. At the hearing, the ALJ granted a continuance to allow Wise to retain an attorney to represent her. On August 26, 2010, Wise appeared via video conference with her attorney before ALJ John E. Sandbothe for a second administrative hearing. Wise and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated January 7, 2011, the ALJ denied Wise's claim.[4] The ALJ determined that Wise had not been under a disability since June 1, 2009, and was not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Wise appealed the ALJ's decision. On May 18, 2012, the Appeals Council denied Wise's request for review. Consequently, the ALJ's January 7, 2011 decision addressing Wise's application for Title II disability insurance benefits was adopted as the Commissioner's final decision.

On July 12, 2012, Wise filed this action for judicial review. The Commissioner filed an Answer on October 17, 2012. On November 19, 2012, Wise filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On January 15, 2013, the Commissioner

---

[3] The record lacks evidence of an initial denial of Wise's application. While both parties assert that Wise's application was denied initially and on reconsideration, they direct the Court only to the denial of her application on reconsideration. *See* Wise's Brief (docket number 10) at 2; Commissioner's Brief (docket number 12) at 2. Interestingly, in his decision, the ALJ also only refers to Wise's application being denied "in a determination on reconsideration[.]" *See* Administrative Record at 718.

[4] This decision is a separate decision from the ALJ's decision regarding Wise's SSI benefits that she received as a child. This decision only addresses Wise's October 2009 application for Title II disability insurance benefits.

filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 24, 2013, Wise filed a reply brief. On July 30, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

4

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV.  FACTS

### A.  Wise's Education and Employment Background

Wise was born in 1990.  She graduated from high school, but was enrolled in special education throughout her schooling.  She had particular difficulties in reading and math.  At the time of the administrative hearing, Wise was taking classes at Hawkeye Community College, in Waterloo, Iowa.  At the hearing, Wise stated that she received help from tutors at Hawkeye Community and was provided extended time to take tests. Wise and her attorney had the following colloquy at the hearing:

> Q:  Okay.  And what are you studying at Hawkeye?
>
> A:  Right now it's letter charts.
>
> Q:  What's that now?
>
> A:  Letter charts.  Right now.
>
> Q:  I'm not sure I understood what you said.  Say it again, would you?
>
> A:  Right now, it's letter charts.  I don't think I'm saying the name right. . . .
>
> Q:  Literature.
>
> A:  Yeah, right . . . I can't pronounce --
>
> Q:  Are you reading a lot of books?
>
> A:  Most of the teachers read the books to you, but yeah.
>
> Q:  What -- are you reading books?
>
> A:  I said yeah.  Most of the teachers reading them, but --
>
> Q:  The teachers read the books to you?
>
> A:  Yeah, you just got to write the notes and they're reading it, write what you can get -- the more you can get a understanding out of what she reading and you write it down.
>
> Q:  And isn't that one of your principal problems?  Are you able to read?
>
> A:  No.  I can read certain things, but I come across sometimes paragraphs or words I don't know, so --
>
> Q:  Yeah, how much -- the records in your case indicate that you can read about the third or fourth grade level.
>
> A:  Yes.
>
> Q:  Is that about right?

6

| A: | Yeah, that's about right. |
| Q: | So, you're in the three or four letter words and -- is that fair? |
| A: | Yeah. |

(Administrative Record at 697-98.)  Wise further testified that she could not read a newspaper. She stated that she could not read the "funny pages" or sports page and would need pictures to help her understand those parts of the newspaper. Wise also indicated that she has difficulty with mathematics. According to Wise, she is able to add and subtract, but multiplication and division are problematic for her.

The record contains a detailed earnings report for Wise. The report covers the time period from 2005 to 2010. Wise earned less than $100.00 in 2005. She had no earnings in 2006. In 2007, she earned $8,146.60, and in 2008, she earned $6,620.24. She has no earnings since 2009.

## B. Administrative Hearing Testimony

### 1. Wise's Testimony

At the administrative hearing, Wise's attorney inquired about Wise's work history. Wise stated that she worked at two fast food restaurants through a cooperative program during high school. Wise's attorney asked Wise whether she had help when working at the fast food restaurants. Wise replied "[y]eah, I would have people there to help me, show me -- if I get something wrong, they will come back and explain it to me. Most likely it would be always somebody that work with you. You won't be on your own working at fast food."[5] She also stated that she tried to work at a meat packaging company, but could not perform the job due to arm and hand problems, including carpal tunnel syndrome.

Wise's attorney also asked Wise to discuss her difficulties with mental health problems:

---

[5] Administrative Record at 700.

7

Q: What do you think your mental health problems are? You had some mental -- you had some --

A: I know I had the learning --

Q: -- serious learning problems?

A: -- problems and sometimes like my mother or anybody would have to tell me -- if they wanted me to do something, they would have to tell me more than once to do it.

Q: You can't remember when you're told to do details?

A: Yeah, I quickly forget things. I quickly blow up at things, just catch an attitude over little things. It's the learning, trying to learn things -- I'm always depressed.

Q: So, you have some depression?

A: Yes.

Q: Okay. How does the depression affect you?

A: I don't like to do a lot of things. I limit myself to doing things because it's either I don't want to be in pain and if I'm in pain I just want to sleep all day. I don't like to be around a lot people because if I do I have to be physical and I end up just being in pain after the whole day, so I'll just be by myself sitting at home or something.

Q: Okay. As a result of the depression and the learning problems, do you have trouble keeping your mind on things?

A: Yes. . . .

Q: How about problems with memory? Do you have problems remembering things?

A: Yes. Quite often, yes. . . .

Q: Do you have problems -- do you get along with people okay?

A: Somewhat I don't come off -- when people meet me, I don't come off as friendly because I don't speak. I don't talk to a lot of people.

Q: Do you have problems with speaking?

A: No, I don't.

Q: You just -- you don't like to be around people?

A: Yeah, it's -- if a lot of people are around me --

Q: How many are a lot?

8

A:     Like, say, when I go to my grandma['s] house, people will be all outside. I will be sitting in my car by myself.

(Administrative Record at 702-04.)

Lastly, Wise's attorney questioned Wise about her physical health problems. Wise explained that since childhood she has suffered from problems with her legs. Specifically, Wise stated that her legs swell and hurt. She further stated that prolonged standing causes her to lose her balance. Wise testified that in order to reduce the pain in her legs, she uses medication, heat, and elevation as treatment. In response to questions about her functional limitations, Wise explained that she is able to: (1) stand for 90 minutes, and (2) sit for 3-4 hours. Wise's attorney also asked Wise why she believed she was unable to work. Wise responded that "[m]y leg -- my legs. I tried to work and things. I'm not saying it's nothing I don't want to do. It's not saying like oh I worked, oh I don't like working. No. It's -- I tried to work and the pain -- I tried to ignore the pain. It gets so severe that I end up crying, breaking down somewhere that I can't stand on my legs."[6] Wise also indicated that environmental factors, including rain, snow, and cold, cause her legs to "really get to acting up, both of them."[7]

### 2.     *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who:

> can lift 20 pounds occasionally and ten pounds frequently, but she can only be on her feet two hours total during the workday; she can only occasionally balance, stoop, crouch, kneel, crawl or climb. I'm going to limit her to simple, routine repetitive work, occasional superficial contact with the public, regular pace, no reading.

---

[6] Administrative Record at 707-08.

[7] *Id.* at 708.

9

(Administrative Record at 710.) The vocational expert testified that under such limitations, Wise could perform the following work: (1) final assembler of optical goods (700 positions in Iowa and 50,000 positions in the nation), (2) final assembler of electronic components (690 positions in Iowa and 54,000 positions in the nation), and (3) final assembler in textile products (450 positions in Iowa and 10,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical, except that the individual "can't sit more than four hours total during a workday and she'd need a slow pace for up to one-third of the day."[8] The vocational expert testified that with such additional limitations, Wise would be precluded from competitive employment.

### C. Wise's Medical History

On May 29, 2009, Wise was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Dr. Roland found that memory testing suggested "the ability to remember 2 and possibly 3 step instructions given by supervisory personnel."[9] Dr. Roland administered the Wechsler Adult Intelligent Scale-IV test to Wise. Her full scale IQ score was 72. Dr. Roland diagnosed Wise with borderline intellectual functioning and swelling in both legs and left hand numbness by Wise's own report. Dr. Roland concluded that:

> Wise is . . . functioning in the borderline range of intellectual performance. Memory and intellect are sufficient for entry level competitive employment. She will need a job that does not require extensive standing secondary to swelling in her legs by self report and discomfort in one or both knees.

(Administrative Record at 442.)

---

[8] Administrative Record at 711.

[9] *Id.* at 440.

10

On June 12, 2009, Wise was referred to Robert M. Welshons, PA-C, for a disability determination examination. Wise reported problems with her arms and legs, but most notably with her legs. She told Welshons that her legs had caused her problems since childhood. Welshons noted that "[t]here are no notes with the chart, so past medical history is unknown. [Wise] cannot tell me what problem she had, but she was seen by Iowa City orthopedics and had surgery as a young child."[10] Wise stated that she suffers from pain and swelling in both of her legs. She indicated that cold weather, standing, and walking aggravate the pain and swelling. She told Welshons that she only uses over-the-counter medications for pain relief. Upon examination, Welshons diagnosed Wise with history of unknown orthopedic problem, left arm pain, and bilateral leg pain. Welshons concluded that:

> [Wise] reports being unable to walk three blocks, and she reports a long history of pain to the legs limiting her activities; however, she was able to play football in 2006 and sustained a rupture of the ACL. She has no diagnosis that she can report to me. Therefore, her prognosis is not able to be determined at this time. As noted above, extremities show full range of motion. She moves easily around the exam room, laying on the table and rising, walking down the hall. She should be able to lift light to moderate weights. She reports problems with standing, walking and moving about but I do not see that today. She would likely have no trouble sitting for extended periods of time. She has no troubles with speaking, hearing or handling objects. Because of a history of knee pain, it would be best if she avoided stooping, kneeling and crawling. She has no restrictions to work environments regarding dust, fumes, temperatures or other hazards. She is only starting medical treatment now. She may get marked relief with medications. She has in no way maximized medical management at this time.

(Administrative Record at 444-45.)

---

[10] Administrative Record at 443.

On June 30, 2009, Dr. Dee Wright, Ph.D., reviewed Wise's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Wise. On the Psychiatric Review Technique assessment, Dr. Wright diagnosed Wise with ADHD and borderline intellectual functioning. Dr. Wright determined that Wise had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Wright determined that Wise was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. Dr. Wright concluded that:

> The preponderance of the evidence in file would support some cognitive limitations of function in [Wise's] case. [Wise] would have difficulty consistently performing very complex cognitive activity that demanded high levels of abstract reasoning; prolonged attention to minute, complex details; and rapid shifts in alternating attention. Despite these restrictions, [Wise] is able to sustain sufficient concentration and attention to perform noncomplex, repetitive, and routine cognitive activities without significant limitations of function.
>
> The preponderance of the evidence in file does not indicate significant limitations of function with social interaction in [Wise's] case. [Wise] possesses adequate expressive and receptive language skills. [Wise] can sustain short-lived, superficial interaction with others in appropriate ways when it is in her perceived interest to do so.

(Administrative Record at 465.)

On September 16, 2009, Wise met with Dr. Mohammad Afridi, M.D., for an initial psychiatric evaluation. Wise informed Dr. Afridi that she was having difficulty with poor

concentration, restlessness, depression, and mood swings. Upon examination, Dr. Afridi found that:

> [Wise is] oriented for time, place and person. She is attentive during the interview. Concentration appears to be normal. Recall and memory are within normal limits. Her attitude is cooperative although somewhat vague at times and avoided or minimizes responses. Eye contact is avoided or fleeting. Affect is in the normal range but mood appears dysphoric. . . . Intelligence appears to be average. Judgment is fair. Insight is present to some extent. There is no evidence of psychotic thinking. She does show motivation to improve and resume a productive life.

(Administrative Record at 481.) Dr. Afridi diagnosed Wise with depressive disorder, attention deficit disorder, and anxiety disorder. Dr. Afridi recommended medication and therapy as treatment.

On October 1, 2009, Dr. Gary Cromer, M.D., reviewed Wise's medical records and provided DDS with a physical RFC assessment for Wise. Dr. Cromer determined that Wise could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Wise could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, but never crawl. Dr. Cromer found no manipulative, visual, communicative, or environmental limitations.

On October 2, 2009, Wise was referred by Dr. Christopher Eagan, D.O., a treating source, to Mary Jo Rathe, PT, for physical therapy. Specifically, Wise was referred for physical therapy to treat left SI joint pain and bilateral knee pain. Rathe noted that:

> [Wise] states that her back began hurting after she had ACL surgery. She has difficulty sitting or standing for any length of time. Her knees hurt all the time. She rates her pain is 2-

13

> 8/10. Knee pain increases with activities such as walking.
> Back pain increases with sitting. She has difficulty falling
> asleep because of her back pain.

(Administrative Record at 543.) Upon examination, Rathe diagnosed Wise with left SI joint pain and bilateral knee pain. Rathe found that Wise had the following impairments: pain and decreased mobility and pain with sleeping. Rathe devised a physical therapy plan to relieve some of Wise's knee and back pain. After four weeks of physical therapy, Wise was pain-free in her back, except when stressed, but continued to have knee pain with movement. Wise was discharged from therapy and directed to continue a home exercise program.

On October 16, 2009, Dr. John Tedesco, Ph.D., reviewed Wise's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Wise. On the Psychiatric Review Technique assessment, Dr. Tedesco diagnosed Wise with ADHD, depressive disorder, and anxiety disorder. Dr. Tedesco determined that Wise had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Tedesco determined that Wise was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. Dr. Tedesco concluded that:

> It is alleged that [Wise] is not able to work based on her
> physical and mental impairments. From a mental perspective,
> evidence is consistent and the claim is credible in showing
> some limitations in her sustained persistence and pace.

However, these limitations are not significant. This conclusion is based on the following observations. [Wise] has not sought or acquired treatment for mental health problems in the recent past until her recent intake. At that time, she resumed medication, which she has found to be helpful in the past. Activities of daily living are not unduly influenced by her mental condition. Her diagnoses are relatively benign, and [she] has not expressed significant concerns about mental health issues in the context of physical healthcare. [Wise] is able to remember and carry out simple instructions. She is able to interact with others without remarkable difficulty.

(Administrative Record at 529.)

On September 8, 2010, at the request of Wise's attorney, Dr. Afridi, a treating source, filled out "Mental Impairment Interrogatories" for Wise. On the interrogatories, Dr. Afridi indicated that he had been treating Wise every two to three weeks for the past year. Dr. Afridi diagnosed Wise with major depressive disorder, anxiety disorder, and ADHD. Dr. Afridi identified the following signs and symptoms for Wise: poor memory, sleep disturbance, personality change, mood disturbance, recurrent panic attacks, loss of interests, feelings of guilt and worthlessness, difficulty thinking or concentrating, social withdrawal and isolation, decreased energy, generalized persistent anxiety, and hostility and irritability. Dr. Afridi opined that "[Wise] finds it very hard to relate to others and to display appropriate affect. She has persistent anhedonia and very low self perception exacerbated by her depression and anxiety."[11] Dr. Afridi found that medications and psychotherapy had helped Wise, but she "continues to have some symptoms that limit her functioning."[12] According to Dr. Afridi, Wise's prognosis includes long-term treatment. Dr. Afridi estimated that Wise would miss three or more days per month due to her impairments or treatment for her impairments. Dr. Afridi determined that Wise had the

---

[11] Administrative Record at 572.

[12] Id.

following limitations: moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Wise is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the

16

> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant

"bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,

524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC

[(residual functional capacity)], age, education, and work experience, there [are] a

significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir.

2005)). The RFC is the most an individual can do despite the combined effect of all of his

or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for

determining "'a claimant's RFC based on all the relevant evidence including the medical

records, observations of treating physicians and others, and an individual's own description

of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011)

(quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Wise had not

engaged in substantial gainful activity since June 1, 2008. At the second step, the ALJ

concluded from the medical evidence that Wise had the following severe impairments:

ADHD, depression/anxiety, patellofemoral syndrome, status post ACL repair, and

borderline intellectual functioning. At the third step, the ALJ found that Wise did not have

17

an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Wise's RFC as follows:

> [Wise] has the residual functional capacity to perform light work . . . except that she can stand/walk for a total of two hours in a normal workday; climb, balance, stoop, kneel, crouch or crawl occasionally; perform only simple, routine, repetitive work; can tolerate only occasional, superficial contact with the public; and can work at a regular pace only. In addition, she cannot read as part of any type of work.

(Administrative Record at 722.) Also at the fourth step, the ALJ determined that Wise did not have any past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Wise could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Wise was not disabled.

### B. Objections Raised By Claimant

Wise argues that the ALJ erred in four respects. First, Wise argues that the ALJ erred by failing to find that she was presumptively disabled because she equals Listing 12.05C for mild mental retardation. Second, Wise argues that the ALJ failed to properly consider and weigh the opinions of her treating doctor, Dr. Afridi. Third, Wise argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Lastly, Wise argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Listing 12.05C

Listing 12.05C provides in pertinent part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

18

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Eighth Circuit summarized the requirements of Listing 12.05C as follows:

a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing additional and significant work-related limitation of function.

*Id.* at 899.

Here, Wise scored a full IQ score of 72 in May 2009. Clearly, Wise does not meet the first requirement of Listing 12.05C, as her full IQ score is not between 60 and 70. Thus, the ALJ apparently believed that he was not required to address Listing 12.05 in his decision due to Wise's full IQ score being above 70. While there is no error in the ALJ's implicit conclusion that Wise does not *meet* the requirements of Listing 12.05C, Wise argues that the ALJ erred because he did not address whether her impairments *equaled* Listing 12.05C. Wise is correct.

In *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003), the Eighth Circuit Court of Appeals pointed out that the Commissioner issued instructions for determining medical equivalence in the Program Operations Manual System ("POMS"). *Id.* at 424. The applicable POMS provision for determining medical equivalence and mental retardation under Listing 12.05C states in pertinent part:

Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria of this paragraph are such that a medical equivalence

19

determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation or function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056. In *Shontos*, the claimant had an IQ score of 72, and medical evidence from her treating doctors which indicated that she had difficulty with anxiety and depression which would interfere with her ability to work. 328 F.3d at 424. The ALJ who considered Shontos' claim did not consider the POMS guidelines. *Id*. The Eighth Circuit determined that the ALJ's failure to consider the POMS guidelines was error. *Id*. Specifically, the Eighth Circuit found that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Id*. (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)). The Eighth Circuit concluded that Shontos' impairments, including borderline intellectual functioning, psychiatric affective disorders, and physical disabilities, were medically equivalent to Listing 12.05C, and remanded the case for an award of benefits. *Shontos*, 328 F.3d at 427.

Similar to *Shontos*, Wise had a full IQ score of 72. Dr. Roland, a consultative examining doctor, and Dr. Wright, a non-examining consultative doctor, both diagnosed Wise with borderline intellectual functioning. Dr. Afridi, a treating doctor, and Dr. Tedesco, a non-examining consultative doctor, both diagnosed Wise with depression and anxiety. Dr. Afridi opined that "[Wise] finds it very hard to relate to others and to display appropriate affect. She has persistent anhedonia and very low self perception

20

exacerbated by her depression and anxiety."[13] Dr. Afridi found that medications and psychotherapy had helped Wise, but she "continues to have some symptoms that limit her functioning."[14] Dr. Afridi estimated that Wise would miss three or more days per month due to her impairments or treatment for her impairments. Dr. Afridi concluded that Wise had the following limitations: moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and constant deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Additionally, the record demonstrates that Wise required special education throughout her schooling, including educational help at Hawkeye Community College. The record also reflects a consistent history of difficulty reading and performing math problems.

Based on the foregoing evidence in the record, the Court finds that the ALJ's failure to address — let alone follow — the POMS guidelines; or even consider whether Wise's borderline intellectual functioning combined with her other significant mental impairments, were medically equivalent to Listing 12.05C, was error.[15] *See Shontos*, 328 F.3d at 424-27. Accordingly, the Court determines that remand is necessary. On remand, the ALJ must determine whether Wise's impairments are medically equivalent to Listing 12.05C.

### 2. *Dr. Afridi's Opinions*

Wise argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Afridi. Specifically, Wise argues that the ALJ's reasons for discounting Dr. Afridi's opinions are not supported by substantial evidence on the record. Wise

---

[13] Administrative Record at 572.

[14] *Id.*

[15] The Court notes that at step two of the five-step sequential evaluation, the ALJ determined that Wise's severe impairments included depression, anxiety, and borderline intellectual functioning.

concludes that if Dr. Afridi's opinions were properly evaluated and weighed by the ALJ, then she would have been found to be disabled.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

22

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

In his decision, the ALJ addressed the opinions of Dr. Afridi as follows:

> Dr. Afridi completed a report on September 8, 2010, in which he indicated that [Wise] would be absent from work more than three times a month because of her mental impairments or treatment. He indicated as well that she had marked, constant or repeated problems in understanding and memory, sustained concentration and persistence, social interaction and adaption. He also noted that she was moderately restricted in her activities of daily living, had marked difficulties with social functioning, was constantly deficient in concentration, persistence and pace and had experienced repeated episodes of deterioration or decompensation.

> Dr. Afridi's conclusions . . . are inconsistent with his conclusions in Exhibit 8F, on page 9, dated September 16, 2009, when he wrote that [Wise] was oriented and attentive during the interview and had normal concentration, recall and memory. In addition they are inconsistent with her ability to live alone, her improvement with medication and treatment and the conclusions of the State agency psychological consultants that she had the ability to engage in simple work. Although Dr. Afridi is treating [Wise], little weight can be given to his conclusions[.]

(Administrative Record at 723-24.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly

in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ offers four reasons for discounting the opinions of Dr. Afridi. First, the ALJ points out that Dr. Afridi's opinions from September 8, 2010 are inconsistent with his opinions from September 16, 2009. While this may be true, the ALJ fails to note that Dr. Afridi's opinions from September 16, 2009, are based on his initial meeting with Wise. Since that time, Dr. Afridi had seen Wise approximately every 2-3 weeks for one year. The regulations require an ALJ to consider both the examining relationship and treatment relationship between a claimant and a treating source, including the length and nature of the relationship, when weighing the opinions of a treating source. *See* 20 C.F.R. § 404.1527(c)(1)-(2). There is no evidence in the record to suggest the ALJ considered these factors when assessing Dr. Afridi's opinions. Therefore, the Court is unconvinced that the ALJ's first reason constitutes a "good" reason for discounting Dr. Afridi's opinions.

Second, the ALJ asserts that Dr. Afridi's opinions are "inconsistent with [Wise's] ability to live alone[.]"[16] In her brief, Wise points out that "[b]ecause the ALJ does not explain how [Wise's] living in a one room apartment by herself is inconsistent with the functional limitations assigned by Dr. Afridi, this statement is not 'sufficiently specific' to satisfy the standards set forth in the Social Security regulations and rulings."[17] The Court agrees, and finds the ALJ's second reason for discounting Dr. Afridi's opinions to be insufficient. Social Security Ruling 96-2p provides that an ALJ must offer "specific

---

[16] Administrative Record at 724.

[17] Wise's Brief (docket number 10) at 22.

reasons for the weight given to the treating source's medical opinion[.]" SSR 96-2p, 1996 WL 374188 (S.S.A.) at *5. It is unclear to the Court, without further specificity, how Wise's living arrangement detracts from Dr. Afridi's opinions.

The ALJ's third reason for rejecting Dr. Afridi's opinions is that his opinions were inconsistent with Wise's "improvement with medication and treatment[.]"[18] Similar to the second reason, Wise points out that "[t]he ALJ does not cite any specific examples of [Wise's] improvement with medication, let alone how any examples are inconsistent with the mental limitations assigned by Dr. Afridi in his responses to the Mental Impairment Interrogatories."[19] In addition to failing to support his conclusion with evidence from the record, the ALJ also ignored Dr. Afridi's opinion that medications and psychotherapy helped Wise, but she "continues to have some symptoms that limit her functioning."[20] Thus, Dr. Afridi acknowledged that medication and treatment helped Wise to some extent, but she continued to suffer limitations due to impairments. The Court concludes that the ALJ's third reason for rejecting Dr. Afridi's opinions is, again, insufficient because it lacks specificity with regard to Wise's alleged improvements in her impairments. *See* SSR 96-2p, 1996 WL 374188 (S.S.A.) at *5.

Lastly, the ALJ's fourth reason for discounting Dr. Afridi's opinions is that his opinions are inconsistent with "the conclusions of the State agency psychological consultants[.]"[21] In considering this reason, the Court bears in mind that "'the opinions of nonexamining sources are generally . . . given less weight than those of examining sources.'" *Wildman*, 596 F.3d at 967 (quoting *Wilcockson v. Astrue*, 540 F.3d 878, 880

---

[18] Administrative Record at 724.

[19] Wise's Brief (docket number 10) at 22-23.

[20] Administrative Record at 572.

[21] *Id.* at 724.

(8th Cir. 2008)). Here, the state agency psychological consultants reviewed Wise's medical records and offered their opinions in June 2009 and October 2009. Dr. Afridi started treating Wise in September 2009, and offered his opinions on Wise's functional abilities in September 2010. Under such circumstances, the Court finds little relevance, if any, to any inconsistences that may exist between the opinions of the consultative psychologists and the opinions of Dr. Afridi, as both psychologists offered their opinions either before Dr. Afridi started treating Wise, or shortly after Dr. Afridi started treating her.

In summary, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Afridi. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Afridi's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Afridi's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Afridi's opinions and support his reasons with evidence from the record.

### 3.   *Credibility Determination*

Wise argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Wise maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Wise's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing

27

so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Wise's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Wise's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 722A.)

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[22] The ALJ failed to apply the law, however, in determining the credibility of Wise's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ discusses Wise's general testimony at length, but offers nothing in terms of the *Polaski* factors and how those factors relate to Wise's subjective testimony and credibility. The ALJ simply states that Wise's "statements concerning the intensity,

---

[22] *See* Administrative Record at 722. The Court notes, however, that the ALJ fails to mention *Polaski* or the factors to be considered in making a credibility determination under *Polaski*.

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[23] The ALJ's decision provides no reasons for discounting Wise's testimony other than her allegations are inconsistent with the ALJ's RFC assessment. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). Because the ALJ's decision lacks any discussion of the reasons for discrediting Wise, except that her allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Wise's credibility. On remand, the ALJ shall set forth in detail his reasons for finding Wise's subjective allegations to be credible or not credible. If on remand, the ALJ finds Wise's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Wise's subjective allegations and the evidence in the record.

### 4. *Hypothetical Question*

Wise argues, among other things, that the ALJ's hypothetical question to the vocational expert failed to accurately describe her mental impairments and some of her physical limitations. Specifically, Wise asserts that the ALJ improperly disregarded the opinions of her treating doctor, Dr. Afridi. Wise also contends that the ALJ failed to consider some physical difficulties, such as avoiding stooping, kneeling, and crawling.[24] Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v.*

---

[23] Administrative Record at 722A.

[24] *See* Administrative Record at 444 (opinions of Welshons, a consultative examining source).

*Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)."). In section *V.B.2* of this decision, the Court remanded this matter for further consideration of the opinions of Dr. Afridi, particularly with regard to Wise's mental impairments. Accordingly, the Court determines that on remand, the ALJ should also reconsider the hypothetical question posed to the vocational expert to make sure that it captures the concrete consequences of Wise's limitations based on the medical evidence as a whole, including the opinions of Dr. Afridi. Additionally, the ALJ should reconsider the opinions of other mental health sources, and the opinions of physical health sources, such as Welshons. *See Hunt*, 250 F.3d at 625 (Requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies.").

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

30

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) consider whether Wise's borderline intellectual functioning combined with her other significant mental impairments, was medically equivalent to Listing 12.05C; (2) fully and fairly develop the record with regard to the opinions of Dr. Afridi; (3) make a proper credibility determination in this matter; and (4) provide the vocational expert with a hypothetical question that captured the concrete consequences of Wise's limitations based on the medical evidence as a whole. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must determine whether Wise's impairments are medically equivalent to Listing 12.05C. Furthermore, the ALJ shall provide clear reasons for accepting or rejecting Dr. Afridi's opinions and support his reasons with evidence from the record, particularly with regard to Wise's mental impairments. The ALJ must also consider all of the evidence relating to Wise's subjective allegations of disability, address his reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Wise's credibility. Lastly, the ALJ shall also provide the vocational expert with a hypothetical question that captures the concrete consequences of Wise's limitations based on the medical evidence as a whole.

31

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 21st day of May, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA